IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND

| | | |
|---|---|---|
| STRONG PHARMACEUTICAL LABORATORIES, LLC, | * | |
| | * | |
| Plaintiff, | * | |
| | * | |
| v. | * | Civil Action No.: RDB 05-3427 |
| | * | |
| TRADEMARK COSMETICS, INC. | * | |
| | * | |
| Defendant. | * | |
| | * | |

\* \* \* \* \* \* \* \* \* \* \* \* \*

## MEMORANDUM OPINION

This action arises out of a Complaint that Strong Pharmaceutical Laboratories, LLC ("Strong" or "Plaintiff") filed against Trademark Cosmetics, Inc. ("Trademark" or "Defendant"). Pending before this Court are two motions: Defendant's Motion to Dismiss for Lack of Personal Jurisdiction and Motion to Transfer. Defendant argues that this Court cannot exercise personal jurisdiction over Defendant because Defendant lacks sufficient contacts with the State of Maryland and also because Plaintiff's cause of action is not related to Defendant's contacts with Maryland. Defendant also contends that this action should be transferred to California under 28 U.S.C. §1404(a) because that forum would be more convenient to the parties. The parties' submissions have been reviewed and no hearing is necessary. *See* Local Rule 105.6 (D. Md. 2004). For the reasons that follow, Defendant's motions are DENIED.

## BACKGROUND

Strong is a limited liability company organized under the laws of the State of Maryland with its principal place of business in Owings Mills, Maryland. (Compl. ¶ 1.) Strong alleges that its business involves "manufactur[ing] a line of proprietary hair care products. . . ." (Miller

Aff. ¶ 2.) Trademark is a corporation organized under the laws of the State of California with its principal place of business in Riverside, California. (Ryngler Aff. p. 1.) Trademark has no offices, plants, or employees in Maryland.[1] (*Id*. at p. 2.) Trademark alleges that its business involves "manufacturing cosmetic products under the private labels of" other businesses. (Ryngler Aff. p. 1.)

Although the precise nature of the relationship between the parties is unclear, there is no dispute that Strong and Trademark have maintained a business relationship since approximately 1998. (*See* Miller Aff. ¶ 3; Ryngler Aff. p. 1.)

> In the ordinary course of its business, Trademark manufactures and sells to Strong various cosmetic and hair care products. In so doing, Trademark formulates the products for Strong in accordance with Strong's specifications and bottles, labels and ships the specific products on behalf of Strong. . . .

(Compl. ¶ 4.; *see also* Ryngler Aff. p. 1.) The parties also do not dispute that, at least during certain periods of their business relationship,

> Strong would issue a Purchase Order to Trademark for the manufacture of a specific product or products. Trademark, pursuant to that Purchase Order would formulate the products for Strong in accordance with Strong's specifications, bottle and label the products, and ship same to Strong for resale to Strong's customers in Maryland, Canada, and elsewhere.

(Miller Aff. ¶ 6; *see also* Ryngler Aff. p. 1.) Strong estimates that, since 1998, it has paid Trademark between $1.5 and $2 Million for goods produced, and services rendered, by

---

[1] Trademark notes that it "does have an account with one beauty salon in Maryland. Since 1997, this salon has purchased product under a private label. In 2005, it purchased approximately $3,000 worth of product. That customer is FOB Riverside, California, and it pays for shipping to Maryland." (Ryngler Aff. p. 2.) Trademark also points out that it has "had a couple of single order sales in Maryland, with no follow-up orders." (*Id*.)

Trademark.  (Miller Aff. ¶ 11.)  Finally, Trademark emphasizes that "[w]hen product has been shipped for Strong, it is done FOB Riverside California, and Strong arranges for its own transportation, or uses its own United Parcel Service account to ship goods."  (Ryngler Aff. p. 2.)

The causes of action asserted by Strong in its Complaint arise from the following allegations.  First, Strong alleges that, in March or April 2005, Trademark manufactured and shipped to Strong's customers located in Canada products that were filled "with an improper substance or substances."  (Compl. ¶ 8.)  Second, Strong alleges that Trademark failed to comply with a specific formula that Strong required Trademark to use when manufacturing products on Strong's behalf.  (*Id*. ¶ 12.)  The formula "required Trademark to use ten percent (10%) of the total volume of each [Strong product] with the active ingredient used in the [Strong product] (the "Active Ingredient")."  (*Id*.)  Strong contends that, at some unspecified time between approximately 1999 and 2005, Trademark "failed to use the formulation required by Strong" and "kept the excess Active Ingredient for its own use and benefit."  (*Id*. at ¶¶ 16-17.)  Finally, Strong maintains that "since 1999 and throughout its business relationship with Strong, [Trademark] has issued incorrect invoices and has misapplied payments made by Strong to Trademark."  (*Id*. at ¶ 19.)

There are clearly two areas of dispute which are relevant to this Court's jurisdictional analysis.  First, the parties dispute the identity and nature of the agreement between Strong and Trademark in early 2005.  During this time period, Strong alleges that Trademark was manufacturing, bottling, and shipping product on Strong's behalf pursuant to purchase orders that Strong issued to Trademark.  (*See* Compl. ¶¶ 6-7.)  However, Trademark contends that a different arrangement governed the relationship between the parties:

3

> Strong had an arrangement with the Canadian Home Shopping Channel ("CHSC"), and at some time in early 2005, Strong approached me, and proposed that Trademark and Strong form a new California limited liability company called "Strong Biosciences, LLC." Strong proposed that this new firm would fill the CHSC orders, and that CHSC would pay the new firm directly. In fact, Trademark and Strong did establish Strong Biosciences, LLC, and product was shipped into Canada, under the agreement with CHSC. Under that agreement, no products were shipped into Maryland.

(Ryngler Aff. p. 2.) Although Strong does not address whether it worked with Trademark to create Strong Biosciences, LLC, Strong notes that it directed Trademark to "beg[in] shipping certain orders directly to Strong's customers in Canada." (Miller Aff. ¶ 10.) Neither party appears to have produced either the purchase orders from early 2005 or any agreements involving Strong Biosciences, LLC.[2] Second, the parties dispute the extent to which goods manufactured by Trademark for Strong were shipped to Maryland. (*Compare* Miller Aff. ¶ 10 ("[U]ntil Strong severed its business relationship with Trademark, Trademark continued to ship numerous other product orders directly to Strong in Maryland.") *with* Mem. Supp. Mot. Dism. p. 9 ("Defendant did not ship into Maryland, or sell in Maryland.").)

On November 2, 2005, Plaintiff filed this action in the Circuit Court for Baltimore County, Maryland. On December 23, 2005, Defendant removed the case to this Court. On January 23, 2006, Defendant filed an Answer to Plaintiff's Complaint that, *inter alia*, reserved

---

[2] In connection with its opposition materials, Strong submitted purchase orders issued to Trademark in years prior to 2005 and invoices and packing slips from Trademark in early 2005. Strong did not submit, however, purchase orders issued to Trademark in early 2005. (*See* Miller Aff. ¶ 8 (Where Strong notes that it "is in possession of a large number of Purchase Orders and invoices similar to those discussed [] above and dating back to 1999, however, such documents are in closed file storage and not readily available.").)

Defendant's claim for lack of personal jurisdiction.[3]  On January 23, 2006, this Court issued a Scheduling Order.  On February 8, 2006, Defendant filed its Motion to Dismiss for Lack of Personal Jurisdiction and Motion to Transfer Case.  (*See* Paper Nos. 14 & 15.)  On March 31, 2006, Defendant filed its Request to Vacate or Suspend the Scheduling Order.[4]  On April 18, 2006, this Court granted Defendant's request to suspend the Scheduling Order in this matter until the pending motions are resolved.

## DISCUSSION

**I.     Personal Jurisdiction.**

   **A.     Standard of Review.**

In order for a court to exercise personal jurisdiction over a non-resident defendant, two conditions must be satisfied: "(1) the exercise of jurisdiction must be authorized under the state's long-arm statute and (2) the exercise of jurisdiction must comport with the due process requirements of the Fourteenth Amendment."  *Carefirst of Maryland, Inc. v. Carefirst*

---

[3]     As a result, Plaintiff is mistaken that "[b]y filing its Answer and submitting itself to the jurisdiction of this Court, Trademark has waived its right to file a Motion to Dismiss." (Pl's Opp. p. 4.)  It is well-established that a personal jurisdictional plea not asserted in a party's first responsive pleading is waived.  Fed. R. Civ. P. 12(h)(1).  In this case, however, Defendant asserted its objection to this Court's exercise of personal jurisdiction in its Answer.  (*See* Answer ¶ 2 ("This court does not have *in personam* jurisdiction over Defendant.").)  Accordingly, Defendant preserved its objection based on personal jurisdiction.  *See*, *e.g.*, *Bethlehem Steel Corp. v. Devers*, 389 F.2d 44,  (4th Cir. 1968).

[4]     In that document, Defendant noted that "Defendant's counsel, hoping that the court may grant a dismissal or a transfer, has been reluctant to engage in the drafting of interrogatories and requests for production of documents." (Paper No. 20 p. 1.)  Defendant also indicated that "[i]n the event that the action were to be transferred to a U.S. District Court in California, or that plaintiff would refile in a state or federal court in California, defendant's Maryland counsel would hand off the defense of this action to California counsel . . . [and] Maryland counsel would not want to have encroached upon the prerogatives of new counsel, in the conduct of discovery." (*Id*. at pp. 1-2.)

*Pregnancy Centers, Inc.*, 334 F.3d 390, 396 (4th Cir. 2003).  As the source of this Court's jurisdiction over this case is based on diversity of citizenship, the principles set forth in *Erie R.R. Co. v. Tompkins*, 304 U.S. 64, 78 (1938) require application of the law of the State of Maryland to questions of substantive law.  Although it is well-established that the outer limits of the Maryland long-arm statute are "co-extensive" with due process requirements, the Maryland Court of Appeals recently noted that analysis under the long-arm statute remains a requirement of the personal jurisdiction analysis.  *Mackey v. Compass Mktg, Inc.*, 892 A.2d 479, 493 n.6 (Md. 2006); *see also Carefirst,* 334 F.3d at 396-97; *Stover v. O'Connell Assocs., Inc.*, 84 F.3d 132, 135 (4th Cir. 1996); MD CODE ANN., CTS. & JUD. PROC. § 6-103 (Maryland long-arm statute).  In order for the exercise of personal jurisdiction to comport with due process, a non-resident defendant must have sufficient "minimum contacts" with the forum state that requiring it to defend itself within the forum state "does not offend traditional notions of fair play and substantial justice." *Int'l Shoe Co. v. Washington*, 326 U.S. 310, 316 (1945).

When this Court's power to exercise personal jurisdiction over a nonresident defendant is challenged by a motion under Fed. R. Civ. P. 12(b)(2), "the jurisdictional question is to be resolved by the judge, with the burden on the plaintiff ultimately to prove grounds for jurisdiction by a preponderance of the evidence." *Carefirst*, 334 F.3d at 396 (citing *Mylan Labs., Inc. v. Akzo, N.V.*, 2 F.3d 56, 59-60 (4th Cir. 1993)).  If the existence of jurisdiction turns on disputed facts, the court may resolve the challenge after a separate evidentiary hearing, or may defer ruling pending receipt at trial of evidence relevant to the jurisdictional question. *Combs v. Bakker*, 886 F.2d 673, 676 (4th Cir. 1989).  If the court chooses to address the issue without conducting an evidentiary hearing, relying solely on the basis of the complaint, affidavits and

discovery materials, "the plaintiff need only make a *prima facie* showing of personal jurisdiction." *Carefirst*, 334 F.3d at 396; *see also Mylan Labs.*, 2 F.3d at 60; *Combs*, 886 F.2d at 676.  In determining whether the plaintiff has proven a *prima facie* case of personal jurisdiction, the court "must draw all reasonable inferences arising from the proof, and resolve all factual disputes, in the plaintiff's favor."  *Mylan*, 2 F.3d at 60; *Carefirst*, 334 F.3d at 396.

**B.      Analysis.**

The analysis of personal jurisdiction begins with a recognition of the distinction between general jurisdiction and specific jurisdiction.  Both general and specific jurisdiction require a separate analysis to determine whether the exercise of *in personam* jurisdiction also comports with "traditional notions of fair play and substantial justice."  *Int'l Shoe*, 326 U.S. at 316.  While personal jurisdiction can be based on either general or specific jurisdiction, the distinction is important.  General jurisdiction arises where the defendant maintains "continuous and systematic" contacts with the forum state.  *Helicopteros Nacionales de Colombia, S.A. v. Hall*, 466 U.S. 408, 414-16 (1984).  In contrast, specific jurisdiction arises where the defendant purposefully establishes minimum contacts with the forum state and the cause of action arises out of those contacts.  *See Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 472, 476-77 (1985).

Defendant contends that this Court lacks *general* jurisdiction because Defendant does not maintain continuous and systematic contacts with Maryland.  (*See* Mem. Supp. Mot. Dism. p. 7.)  In addition, Defendant argues that this Court lacks *specific* jurisdiction because Plaintiff's cause of action does not arise out of Defendant's minimum contacts with Maryland.  (*Id*. at pp. 6-8.)  As a result, Defendant concludes that "there is no basis for exercise of jurisdiction over this defendant by any court within Maryland [and] the action should be dismissed or transferred. . . ."

(*Id*. at p. 10.)   Each of Defendant's arguments are addressed in turn below.

### 1. **General Jurisdiction.**

After reviewing the affidavits and materials submitted by the parties, this Court finds that Plaintiff has failed to allege sufficient facts for purposes of asserting general jurisdiction over Defendant.  As the United States Court of Appeals for the Fourth Circuit has explained:

> Even "continuous activity of some sorts [by a corporation] within a state is not enough to support [general jurisdiction over the corporation]."  *Id.* at 318.  Only when the "continuous corporate operation within a state [is] thought so substantial and of such a nature as to justify suit against it on causes of action arising from dealings entirely distinct from those activities" may a court assert general jurisdiction over a corporate defendant.  *Id.*

*Nichols v. G.D. Searle & Co.*, 991 F.2d 1195, 1199 (4th Cir. 1993).

In the *Nichols* case, the Fourth Circuit held that general personal jurisdiction could not be asserted even though the defendant—G.D. Searle & Co. ("Searle"), a manufacturer of pharmaceutical products—employed 17-21 people in Maryland as consumer product representatives.  *Id*. at 1198.  Searle's employees drove company cars that were registered in Maryland and promoted the company's products to physicians, hospitals, wholesalers, and retailers.  *Id*.  Searle made certain purchases in Maryland, realized annual sales of between $9 and $13 Million in Maryland for five years prior to the litigation, and contracted with a Maryland firm for some of its drug research.  *Id*.  Searle also held several meetings within Maryland to organize the efforts of its local, regional, and national promotional staff.  *Id.*  After considering these contacts, the Fourth Circuit held that although Searle's contacts were systematic and continuous, there were not substantial enough to justify exercising general jurisdiction. *Id*. at 1200.

In this case, Defendant's contacts with Maryland are of a less substantial nature than those considered by the Fourth Circuit in *Nichols*. Defendant has no offices or employees in Maryland. Although Plaintiff contends that, from time to time, Defendant solicited new business from Plaintiff, the allegations made by Plaintiff in its Complaint and opposition papers indicate that Plaintiff typically initiated business with Defendant by issuing purchase orders. Finally, there is no suggestion that Defendant made any purchases or maintained a physical presence of any sort in Maryland.[5] Accordingly, this Court finds that Plaintiff has failed to establish a *prima facie* case for the exercise of general jurisdiction over Defendant. *Cf. Tyler v. Gaines Motor Lines, Inc.*, 245 F. Supp. 2d 730 (D. Md. 2003).

### 2.     Specific Jurisdiction.

The exercise of specific jurisdiction requires a *prima facie* showing by Plaintiff that: (1) Defendant purposefully established minimum contacts with the State of Maryland; (2) Plaintiff's causes of action arise out of those contacts, and (3) this Court's exercise of personal jurisdiction would be constitutionally reasonable. *See*, *e.g.*, *Burger King*, 471 U.S. at 472 & 476-77. In determining whether the plaintiff has proven a *prima facie* case, this Court "must draw all reasonable inferences arising from the proof, and resolve all factual disputes, in the plaintiff's favor." *Mylan*, 2 F.3d at 60; *Carefirst*, 334 F.3d at 396. For the reasons stated below, this Court finds that Plaintiff has made a *prima facie* case for the exercise of specific jurisdiction over Defendant.

The Maryland long arm statute provides that Maryland courts may exercise personal

---

[5] From 1998-2005, Defendant's sales in the State of Maryland appear to total no more than $2 Million. Neither Plaintiff nor Defendant addresses the percentage of Defendant's total sales that this figure represents.

jurisdiction over a nonresident person that "transacts any business" or "contracts to supply goods" in Maryland. MD CODE ANN., CTS. & JUD. PROC. § 6-103(b)(1)-(2).[6] As Maryland courts have noted, "the defendant need never have been physically present in the state." *Bahn v. Chicago Motor Club Ins.*, 634 A.2d 63, 67 (Md. Ct. Spec. App. 1993) (citation omitted); *see also Sleph v. Radtke*, 545 A.2d 111, 116 (Md. Ct. Spec. App. 1988) ("An absence of physical contacts will not defeat the exercise of personal jurisdiction where a commercial actor's efforts have been 'purposefully directed' toward residents of another state.") (citation omitted). Finally, the words "transacts any business" in the Maryland long arm statute have been interpreted broadly to include not only acts of commerce or transactions for profit, but also acts which constitute a purposeful activity within the state. *See A.C.S. Leasing, Inc. v. Porter*, 651 F. Supp. 384, 385-86 (D. Md. 1987).

In this case, Defendant does not appear to dispute that it transacted business and

---

[6] MD CODE ANN., CTS. & JUD. PROC. § 6-103 provides in relevant part:

(a) If jurisdiction over a person is based solely upon this section, he may be sued only on a cause of action arising from any act enumerated in this section.
(b) A court may exercise personal jurisdiction over a person, who directly or by an agent:
　(1) Transacts any business or performs any character of work or service in the State;
　(2) Contracts to supply goods, food, services, or manufactured products in the State . . .
　(4) Causes tortious injury in the State or outside of the State by an act or omission outside the State if he regularly does or solicits business, engages in any other persistent course of conduct in the State or derives substantial revenue from goods, food, services, or manufactured products used or consumed in the State. . . .

contracted to supply goods in Maryland.[7]  Defendant also does not contest Plaintiff's representations that (1) from 2002 through 2005, Plaintiff issued in excess of 70 purchase orders to Defendant, and (2) in return for each of those purchase orders, Defendant manufactured, bottled, and shipped products made to Plaintiff's specifications and issued an invoice to Plaintiff in Maryland.  In addition, Defendant does not appear to dispute Plaintiff's claim that their business relationship changed substantially over time.[8]  (*See* Compl. ¶¶ 13-14 (from 1999 to June 2004, Strong purchased the "Active Ingredient" for use in Strong products; starting in July 2004, however, Strong authorized Trademark to purchase the Active Ingredient directly).)  Finally, Defendant does not dispute that, from time to time, it would solicit new business from Plaintiff.  Resolving all factual disputes in Plaintiff's favor, this Court concludes that Plaintiff has made a *prima facie* showing that Defendant purposefully established minimum contacts with the State of Maryland.

This Court must also address whether the causes of action asserted by Plaintiff are related to or arise out of the contacts described above.  In this regard, Defendant argues that Plaintiff's cause of action for fraud (Count IV) must be based on § 6-103(b)(4) of the Maryland long arm statute, which requires "the exercise of *general* jurisdiction . . ." (Mem. Supp. Mot. Dism. p. 2 (emphasis added; citations omitted).)  Defendant is incorrect, however, that a claim based on

---

[7] (*See* Miller Aff. ¶ 3 ("Beginning in approximately 1998 . . . Strong began a business relationship with Trademark whereby Trademark would manufacture various cosmetic and hair care products to Strong's specifications and sell such products to Strong.") & Exs. (representative sample of invoices from Trademark to Strong); *see also* Ryngler Aff. p. 1 ("Trademark and Strong have done business together.  In the normal course, Trademark manufactures product under Strong's label.").)

[8] The facts involved with these changes in the business relationship—*e.g.*, extent and nature of negotiations—are not discussed by either party.

§ 6-103(b)(4) of the Maryland long arm statute must be based *solely* on general jurisdiction. Although claims under § 6-103(b)(4) require greater contacts than those necessary for claims under §§ 6-103(b)(1)-(2), the level is distinct from that required for general jurisdiction. *See*, *e.g.*, *Camelback Ski Corp. v. Behning*, 513 A.2d 874, 880 (Md. 1988) (analyzing § 6-103(b)(4) not just in terms of general jurisdiction, but whether contacts amount to "persistent course of conduct"), *vacated and remanded on other grounds*, 480 U.S. 901 (1987); *Dring v. Sullivan*, 423 F. Supp. 2d 540, 546-47 (D. Md. 2006) (same); *Jafarzadeh v. Feisee*, 776 A.2d 1, 4 (Md. Ct. Spec. App. 2001) (same); *United Merchants & Mfrs., Inc. v. David & Dash, Inc.*, 439 F. Supp. 1078, 1084 (D. Md. 1977) (analyzing § 6-103(b)(4) in terms of whether contacts are "fairly extensive") (citations omitted). For reasons stated above, this Court finds that Plaintiff has made a *prima facie* showing that Defendant's business relationship with Plaintiff involves contacts that are sufficient for purposes of satisfying the "persistent course of conduct" and "substantial revenue" requirements under § 6-103(b)(4).[9]

Defendant also attempts to limit the relevant contacts to purchase orders issued by Plaintiff in early 2005. (*See* Mem. Supp. Mot. Dism. p. 2 ("Although it is difficult to discern in the remaining counts, it appears that Strong is basing the action upon the 'series of Purchase Orders' of 'March or April, 2005'." (quoting Complaint ¶ 6.).) Defendant argues that because those particular purchase orders involved goods that were shipped directly to Strong's customers in Canada (as opposed to Maryland), any attempt by Plaintiff to rely on a theory of specific jurisdiction would be "nonsensical." (Mem. Supp. Mot. Dism. p. 8.) This argument is flawed

---

[9] Although not addressed by the parties, courts have allowed fraud and misrepresentation claims to proceed under § 6-103(b)(1). *See*, *e.g.*, *Giannaris v. Cheng*, 219 F. Supp. 2d 687 (D. Md. 2002).

for three reasons. First, although the causes of action in Plaintiff's Complaint focus on transactions in early 2005, they also appear to encompass transactions that occurred during other time periods. For example, Plaintiff's cause of action for breach of contract (Count I) includes not only claims based on the 2005 purchase orders, but also claims based on invoices received from Defendant. (*See* Compl. ¶ 25 ("Trademark has improperly billed Strong for various products and services and has failed to properly credit payments made by Strong to the proper accounts and/or invoices.").) There is no indication in the Complaint that the invoices upon which Plaintiff's breach of contract claim is breached are limited by date. (*Id.*)

Second, Defendant has provided no basis for its argument that this Court cannot take into consideration aspects of Defendant's contacts with Maryland *other* than the transaction from early 2005, which included purchase order(s) from Plaintiff, the manufacturing, bottling, and shipping of goods by Defendant, and invoice(s) from Defendant. The relevant inquiry is whether Plaintiff's causes of action "arise[] from" Defendant's contacts with Maryland. MD CODE ANN., CTS. & JUD. PROC. § 6-103(b). Defendant's contacts with Maryland, which consist of many transactions similar to this one spanning from 1998-2005, are more extensive that the single transaction that Defendant asks this Court to consider. Defendant's established relationship with Plaintiff is admitted by both parties. (*See* Miller Aff. ¶ 3; *see also* Ryngler Aff. p. 1.) Important aspects of this relationship, moreover, may have been governed by contracts that the parties have yet to produce or the course of conduct established between the parties. *See* BACKGROUND, *supra*. Such established relationships are a factor for consideration in assessing a Defendant's contacts with the forum state for purposes of analyzing specific jurisdiction. *See Neuva Engineering, Inc. v. Accurate Elec's, Inc.*, 628 F. Supp. 953, 957 (D. Md. 1986) (evidence that

relationship between the parties "was a special, heavily interdependent one" is important to jurisdictional analysis).[10]

Third, Defendant's emphasis on the fact that the goods it manufactured for Plaintiff were shipped Free On Board ("FOB") is misplaced. FOB is a "method of shipment whereby goods are delivered at designated locations, usually a transportation depot, at which legal title and thus the risk of loss passes from seller to buyer." *MEMC Elec. Materials, Inc. v. Mitsubishi Materials Silicon Corp.*, 420 F.3d 1369, 1374 (Fed. Cir. 2005). Plaintiff alleges that Defendant shipped goods FOB into Maryland until Plaintiff terminated the relationship in 2005. (*See* Pl.'s Opp. Mot. Dis. p. 3.) Plaintiff also contends that Defendant's shipments of goods FOB into Canada (in early 2005) were made pursuant to same process—*i.e.*, purchase orders, manufacturing, bottling and shipping, and invoices—as the goods shipped FOB into Maryland (throughout the business relationship). (*Id.*) Although Defendant disputes the quantity of the goods that actually reached Maryland customers, (*see* Def.'s Reply p. 3), this Court must resolve all factual disputes and inferences in Plaintiff's favor for purposes of this motion. Accordingly, Plaintiff's allegations regarding Defendant's shipment of goods FOB into Maryland support Plaintiff's *prima facie* case for the exercise of specific jurisdiction over Defendant. *See Luv n' Care, Ltd. v. Insta-Mix, Inc.*, 438 F.3d 465, 471-472 (5th Cir. 2006) (noting that "a FOB term does not prevent a court from exercising personal jurisdiction over a non-resident defendant

---

[10] In cases similar to this one, courts consider the business relationship in general when determining whether a specific cause of action arises out of the defendant's contacts with the forum state. *See*, *e.g.*, *Neuva*, 628 F. Supp. at 955-57 (considering nature of business relationship in the context of a breach of contract claim for defendant's alleged failure to pay $113,018.97 for electronic circuit boards that it received from plaintiff); *Tate Access Floors, Inc. v. Commercial Structures & Interiors, Inc.*, No. 93-2807, 1994 U.S. Dist. LEXIS 5047 (D. Md. 1986) (considering nature of business relationship in the context of an action to recover balance allegedly owed by defendant in connection with flooring goods worth $57,000).

where other factors, such as the quantity and regularity of shipments, suggest that jurisdiction is proper")[11]

Finally, this Court considers whether the exercise of personal jurisdiction over Defendant would be constitutionally reasonable. In order to comport with "traditional notions of fair play and substantial justice," *Int'l Shoe*, 326 U.S. at 316, a defendant's contacts with the forum state must be substantial enough that he might reasonably expect to be "haled into court there." *Stratagene v. Parsons Behle & Latimer,* 315 F. Supp. 2d 765, 769 (D. Md. 2004) (citing *Worldwide Volkswagen Corp. v. Woodson,* 444 U.S. 286, 297 (1980)). Courts have consistently exercised personal jurisdiction over defendants who have reached out to create extensive business relationships with plaintiffs in the forum state where the cause of action arises from that relationship. *See, e.g., Hardee's Food Sys. v. Beardmore*, 169 F.R.D. 311, 315-16 (E.D.N.C. 1996); *Potomac Design v. Eurocal Trading*, 839 F. Supp. 364, 370-71 (D. Md. 1993); *see also Burger King*, 315 U.S. at 479-82. For reasons stated above, Plaintiff has made a *prima facie* showing that Defendant's contacts with the State of Maryland cannot be characterized as "random, fortuitous or attenuated.." *Burger King*, 471 U.S. at 475. As a result, the exercise of personal jurisdiction by this Court does not offend "traditional notions of fair play and substantial justice." *Int'l Shoe*, 326 U.S. at 316

In sum, this Court finds that Plaintiff has established a *prima facie* case for the exercise of specific jurisdiction over Defendant. Accordingly, Defendant's Motion to Dismiss for Lack of Personal Jurisdiction is DENIED.

---

[11] Defendant cites *Charia v. Cigarette Racing Team, Inc.*, 583 F.2d 184 (5th Cir. 1978) for the proposition that FOB shipments are not relevant to the jurisdictional analysis. That case has been distinguished, however, on the basis that the contacts at issue were "sporadic and isolated." *Insta-Mix*, 438 F.3d at 471.

**II.     Transfer of Venue.**

   **A.     Standard of Review.**

A district court may transfer an action "for the convenience of parties and witnesses, in the interests of justice . . . to any other district or division where it might have been brought." 28 U.S.C. § 1404(a). The decision to transfer an action under § 1404(a) is made according to an "individualized, case-by-case consideration of convenience and fairness." *Stewart Org., Inc. v. Ricoh Corp.*, 487 U.S. 22, 29 (1988). In assessing the respective interests of the parties, courts consider the following factors:

> (1) the plaintiff's initial choice of forum, (2) relative ease of access to sources of proof, (3) availability of compulsory process for attendance of unwilling witnesses, and the cost of obtaining attendance of willing and unwilling witnesses, (4) possibility of a view of the premises, if appropriate, (5) enforceability of a judgment, if one is obtained, (6) relative advantages and obstacles to a fair trial, (6) other practical problems that make a trial easy, expeditious and inexpensive, (7) administrative difficulties of court congestion; . . . and (8) avoidance of unnecessary problems with conflicts of laws.

*Choice Hotels Int'l, Inc. v. Madison Three, Inc.*, 23 F. Supp. 2d 617, 622 (D. Md. 1998); *see also Brock v. Entre Computer Centers, Inc.,* 933 F.2d 1253, 1257 (4th Cir. 1991) ("Decisions whether to transfer a case pursuant to 28 U.S.C. § 1404 are committed to the discretion of the transferring judge"). The trial court must take into consideration "the convenience of the witnesses and those public-interest factors of systemic integrity and fairness that, in addition to private concerns, come under the heading of the 'interest of justice'" and determine whether the balance of those factors weigh in favor of transfer. *Brock*, 933 F.2d at 1258 (*citing Stewart Organization, Inc. v. Ricoh Corp.*, 487 U.S. 22, 30-31 (1988)). Ultimately, however, "unless the balance is strongly in favor of the defendant, the plaintiff's choice of forum should rarely be disturbed." *Collins v.*

*Straight, Inc.*, 748 F.2d 916, 921 (4th Cir. 1984) (citing *Gulf Oil v. Gilbert*, 330 U.S. 501, 508 (1946)).

      **B.**      **Analysis.**

Trademark argues that this action should be transferred to the United States District Court for the Southern District of California under 28 U.S.C. § 1404(a) because its records and potential witnesses are located there, and because the defective products were manufactured there.[12] Section 1404(a) empowers a district court to transfer a case "for the convenience of parties and witnesses, in the interest of justice." In response, Plaintiff notes that its records, potential witnesses, and other evidence are located in Maryland. In exercising its discretion to transfer, this court considers a number of factors, including Plaintiff's choice of forum, ease of access to proof, ease and cost of the attendance of witnesses and other factors that further "the interests of justice. *See*, *e.g.*, *Choice Hotels,* 23 F. Supp. 2d at 622. After considering the relevant factors, this Court finds that transferring this action would accomplish nothing more than "shift[ing] the greater burden and inconvenience of trial from defendant[] to plaintiff, which is not a proper purpose of a transfer of venue." *Id*. This Court is not persuaded that the "interests of justice" would be advanced by a transfer of venue. Accordingly, Plaintiff's Motion to Transfer under § 1404(a) is DENIED.

## **CONCLUSION**

---

[12] Defendant also argues that this action should be transferred pursuant to 28 U.S.C. § 1406(a) because this Court lacks personal jurisdiction over Defendant. *See* 28 U.S.C. § 1406(a) (providing that "the district court of a district in which is filed a case laying venue in the wrong division or district shall dismiss, or if it be in the interest of justice, transfer such case to any district or division in which it could have been brought."). For reasons stated above, however, this Court has denied Defendant's Motion to Dismiss for Lack of Personal Jurisdiction. *See* DISCUSSION § I.B.2, *supra*.

For the foregoing reasons, Defendant's Motion to Dismiss for Lack of Personal Jurisdiction and Motion to Transfer are DENIED.  A separate Order follows.


Dated: July 17, 2006                          /s/
                                              Richard D. Bennett
                                              United States District Judge